# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2025

Lyle W. Cayce
Clerk

————————

No. 24-50268

————————

In the Matter of Mohammad Reza Assadi

*Debtor*,

Mohammad Reza Assadi,

*Appellant*,

*versus*

Randolph N. Osherow, *Chapter 7 Trustee*,

*Appellee*.

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-62

————————————————————

Before Stewart, Dennis, and Haynes, *Circuit Judges*.

Per Curiam:[*]

In this bankruptcy case, we deal with a pro se debtor challenging two court orders. In the first, the bankruptcy court awarded $70,000 in attorneys' fees to general counsel of the Trustee. In the second, the

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50268

bankruptcy court granted a motion of the Trustee to pay appellate counsel a flat fee of $60,000.

After considering the briefs and the governing law, we AFFIRM the two orders.

I.

Since Mohammad Assadi's bankruptcy proceedings began nearly five years ago, a litany of appeals has ensued. In each, we have affirmed the decisions of the bankruptcy court.[1]

Evidently, the disputes have not ended. Now, in his fourth appeal, pro se debtor Assadi challenges orders of the bankruptcy court approving: (1) the fee application of general counsel of the estate, and (2) the Trustee's request to change appellate counsel's rate from an hourly fee to a flat fee. The court granted both motions without holding an evidentiary hearing. Assadi contends this violated his right to due process and was improper under Federal Rule of Bankruptcy Procedure 9014. He also argues that the orders err on the merits: they grant excessive fees to general and appellate counsel and violate the requirements of 11 U.S.C. §§ 328 and 330, which govern attorney fee arrangements in bankruptcy. Having lost before the district court, Assadi invokes our jurisdiction under 28 U.S.C. § 158(d)(1).

---

[1] *See Assadi v. Osherow* (*In re Assadi*), No. 21-50293, 2021 WL 4889196, at *1 (5th Cir. Oct. 19, 2021) (per curiam) (affirming decision to convert to Chapter 7 proceeding); *Assadi v. Osherow* (*In re Assadi*), No. 22-50452, 2022 WL 17819599, at *2 (5th Cir. Dec. 20, 2022) (per curiam) (affirming order allowing the Trustee to settle the state court judgment); *Assadi v. Osherow* (*In re Assadi*), No. 23-50523, 2024 WL 775175, at *1–2 (5th Cir. Feb. 26, 2024) (per curiam) (affirming, among other things, decision to allow the Trustee to hire "special appellate counsel" to handle the volume of appeals initiated by Assadi).

No. 24-50268

II.

Although we are the second court of review, we apply the same standard of review that the district court applied to the bankruptcy court's decisions. *Barron & Newburger, P.C. v. Tex. Skyline, Ltd.* (*In re Woerner*), 783 F.3d 266, 270 (5th Cir. 2015) (en banc). Relevant here, we review awards of attorneys' fees for abuse of discretion. *Id.* "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard [, reviewed de novo,] or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Id.* at 270–71 (alteration in original) (quotation omitted).

We begin by analyzing if the bankruptcy court followed the proper procedures, and then we turn to the merits of each order.

A.

First, we check if the bankruptcy court abused its discretion by following improper procedures when granting the two fee motions.

"Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Krueger v. Torres* (*In re Krueger*), 812 F.3d 365, 370 (5th Cir. 2016) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)). Assadi received notice of both motions, and he filed written objections to both, before the court ruled on either. This is sufficient for constitutional purposes.

Moreover, the bankruptcy court complied with the procedural rules. An evidentiary hearing must occur if a motion "cannot be decided without resolving *a disputed material issue of fact*." FED. R. BANKR. P. 9014(d) advisory committee's note to 2002 amendments (emphasis added); *see Neville v. Eufaula Bank & Tr. Co.* (*In re U.S. Golf Corp.*), 639 F.2d 1197, 1202 (5th Cir. Mar. 1981) (stating that, when "determin[ing] the appropriate

attorneys['] fees," the bankruptcy judge "must hold an evidentiary hearing if there are any disputed factual issues").

Assadi failed to raise a material factual dispute in response to either motion. For example, when objecting to general counsel's fee application, Assadi argued that each time entry contained insufficient detail and that daily tasks should not have been grouped into a single billing. When objecting to the motion to pay appellate counsel a flat fee, Assadi argued that appellate counsel did not qualify as "special counsel" under the governing statute and that the requested fee was unreasonable considering the poor decision-making of the Trustee and lack of detailed billing. On the whole, these objections concern the legal conclusions the court should draw from the record. They fail to assert disputed factual issues that would benefit from "testimony of witnesses," and are therefore outside the purview of Rule 9014's calls for an evidentiary hearing. FED. R. BANKR. P. 9014(d) advisory committee's note to 2002 amendments. Accordingly, the bankruptcy court did not abuse its discretion when concluding that the two motions could be decided on the written submissions of the parties.

B.

Next, we see if the bankruptcy court abused its discretion by granting both motions.

Critical to our evaluation is the statutory scheme governing retained attorneys in bankruptcy proceedings. Pursuant to 11 U.S.C. § 327, a trustee has the authority to employ an attorney to represent or assist the trustee in carrying out the trustee's duties, subject to the court's approval. Trustees can then elect to compensate the retained attorney under either § 328 or § 330.

A trustee who seeks to compensate an attorney under § 328(a) must seek court approval of the compensation terms at the outset of the

engagement. *Peele v. Cunningham* (*In re Tex. Sec., Inc.*), 218 F.3d 443, 445 (5th Cir. 2000). Ex ante approval of this sort helps retained attorneys avoid any uncertainty as to their eventual compensation, but it comes at a cost: this provision is extraordinarily rigid, and any deviations from the preapproved compensation plan will be heavily scrutinized by the appellate court. *ASARCO, L.L.C. v. Barclays Cap., Inc.* (*In re ASARCO, L.L.C.*), 702 F.3d 250, 257–60 (5th Cir. 2012). In fact, the court can only modify the attorney's compensation "after the conclusion of such employment" if the original "terms and conditions prove to have been improvident in light of developments *not capable of being anticipated* at the time of the fixing of such terms." 11 U.S.C. § 328(a) (emphasis added). We have meticulously walked through the plain text of this provision and held that it constitutes an abuse of discretion for a court to modify a § 328 compensation plan without explaining "with specificity why the subsequent developments were *incapable* of being foreseen." *In re ASARCO, L.L.C.*, 702 F.3d at 258 (emphasis added) (internal quotation marks and citation omitted).

A trustee who seeks to compensate an attorney under § 330(a), in contrast, moves for court approval of an attorney's fees after the litigation services have been provided. 11 U.S.C. § 330(a). Bankruptcy courts considering fee applications under this provision are vested with broad discretion, and they consider a variety of factors when calculating what constitutes "reasonable compensation" for the retained attorney. *Id.* § 330(a)(1)(A). Our review of these awards is, accordingly, far less exacting.

With that background, we first analyze the order granting general counsel's fee application pursuant to § 330. Then, we analyze the order approving the flat fee arrangement of appellate counsel pursuant to § 328.

No. 24-50268

1.

At the beginning of the bankruptcy proceedings, the Trustee moved to employ general counsel of the estate. Nearly two years later, after completing its representation, general counsel moved for its attorneys' fees, requesting an award of $70,000.00 under 11 U.S.C. § 330. On appeal, Assadi argues that such an amount is extravagant and "demonstrably harm[s] the estate and its creditors." He also argues that the court erred by failing to calculate the lodestar or distinguish between compensable legal services and noncompensable, administrative tasks.

Bankruptcy courts can award "reasonable compensation for actual, necessary services rendered," 11 U.S.C. § 330(a)(1)(A), to attorneys hired under 11 U.S.C. § 327. The word "necessary" is narrow; professionals compensated under § 330(a) must perform services "requiring legal expertise." *Sylvester v. McCall, L.L.P.* (*In re Sylvester*), 23 F.4th 543, 548 (5th Cir. 2022) (per curiam). In other words, § 330's provisions are limited: attorneys cannot recover fees when they perform work "that a trustee would . . . generally be expected to perform without an attorney's assistance." *Id.* at 549.

In calculating attorneys' fees, "bankruptcy courts must first calculate the amount of the lodestar. After doing so, bankruptcy courts then may adjust the lodestar up or down based on the factors contained in § 330."[2] *CRG Partners Group, L.L.C. v. Neary* (*In re Pilgrim's Pride Corp.*), 690 F.3d 650, 656 (5th Cir. 2012) (internal quotation marks and citation omitted). The court "must explain the weight given to each factor that it considers and how each factor affects its award." *In re Cahill*, 428 F.3d 536, 539–40 (5th Cir.

---

[2] A court calculates the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993).

2005) (per curiam). But our review of the final award is not exacting, as "bankruptcy judges have wide discretion in determining attorneys['] fees in proceedings before them." *U.S. Golf Corp.*, 639 F.2d at 1201.

The $70,000 award falls within that wide discretion. Importantly, the submitted fee application detailed the lodestar calculation: it provided that general counsel had spent 190.9 hours handling litigation matters and billed at a rate of $500.00/hour. This totaled to $95,450.00—significantly more than the amount awarded by the court. The court's brief order observed that the docket contained "an incredible 466 entries" over two years, that general counsel's actions were "reasonable, necessary, and in the best interests of the estate and all the estate's shareholders," and that "the rates charged [were] well within the norm for this market." *Cf. Sylvester*, 23 F.4th at 549–50 (vacating an award of attorneys' fees when the bankruptcy court expressly permitted recovery "for the performance of ordinary trustee duties because of the successful result of the bankruptcy proceeding"). Although the order was rather short, it is nevertheless sufficient in this instance, where the lodestar can be readily decipherable from the record,[3] and where the awarded fees were less than that total lodestar amount.[4] We thus hold that the district court acted within its discretion in granting the § 330 application of the Trustee's general counsel. Accordingly, we AFFIRM the award.

---

[3] *Cf. Cont'l Ill. Nat'l Bank & Tr. Co v. Wooten, Ltd.* (*Evangeline Refin. Co.*), 890 F.2d 1312, 1326 (5th Cir. 1989) ("The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney or trustee who has not done so himself.").

[4] *Cf. Pilgrim's Pride Corp.*, 690 F.3d at 656 ("Although upward adjustments of the lodestar figure . . . are still permissible, such modifications are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts." (cleaned up) (quotation omitted)).

2.

Two years into the bankruptcy proceedings, the Trustee moved to employ Hopkins Law, PLLC, as "special counsel for the estate," representing that the firm would handle what (at that time) was Assadi's currently pending second appeal. In that motion, the Trustee represented that the attorneys would be compensated at $350.00 an hour. Attached to the motion was a Letter of Engagement signed by both Hopkins Law and the Trustee. It outlined the terms of retention, which were "expressly subject to approval of the Court . . . pursuant to 11 U.S.C. § 328(a)." The bankruptcy court entered an order preapproving the compensation structure for that second appeal.

Months later, the Trustee sought court approval for Hopkins Law to receive a modified flat fee of $60,000. In the motion, the Trustee represented that the lump sum would be payment "for all work performed and *any work necessary in the future.*" (emphasis added). He argued that this flat fee would constitute a more beneficial arrangement for the estate as the debtor continued to "object[] to almost every pleading filed no matter how frivolous and nonsensical that objection might be." Over objections from Assadi, the court granted the motion, summarily stating that the decision to change the fee arrangement with Hopkins Law was "entirely the Trustee's prerogative, a decision made within his own business judgment." The court found the modification to be "sound," citing "the extreme litigiousness of the Debtor."

On appeal, Assadi argues that "the trustee's attorney circumvented the stricter constraints of § 328(a), opening the door for post-hoc justifications." He also argues that the court "improperly shift[ed] the standard of review from 11 U.S.C. § 328(a) to 11 U.S.C. § 330(a)."

We hold that the bankruptcy court did not abuse its discretion when it approved a new compensation structure for Hopkins Law. Although entitled a "modification," the substance of the application belies that label. The Trustee noted before the bankruptcy court that Hopkins Law spent 50.9 hours on the second appeal. This totals $17,815 at the preapproved hourly rate of $350. In essence, the second application sought the court's preapproval of the remainder of that flat fee—$42,185—for "*any work necessary in the future.*" At bottom, the court's order was another preapproval order for Hopkins Law's work handling all future appeals; it was not an order modifying payment "after the conclusion" of Hopkins Law's employment. *See* 11 U.S.C. § 328(a). Thus, the court was under no obligation to note any unforeseen developments since the previous approval order. *See Daniels v. Barron* (*In re Barron*), 325 F.3d 690, 693 (5th Cir. 2003).

We stress that the bankruptcy court's order is economically sound. By constantly appealing, Assadi had been imposing legal fees on the Trustee that had no decipherable ceiling. The switch to a flat fee for all appeals after the second preserved the possibility of recovery for creditors, considering that the legal fees had the potential to accrue past $60,000. Accordingly, we AFFIRM the order approving the flat fee.

## III.

In conclusion, we AFFIRM both orders. All pending motions are DENIED.